and the ship was sailed on the joint account of himself and the other owners; and he cannot in such a case have had any lien for wages, or work and labor, upon his own vessel. Whatever claim he may have on this ground, must form one of the items of the account to be taken of the earnings and expenses of the vessel.

It has been argued, that though admiralty has not jurisdiction of matters of account between part owners generally, yet if the part owners themselves actually serve on board in different capacities, pursuant to the original contract under which they become owners, or, to express it in different words, if several mariners buy a vessel to be navigated by them for their joint profit, the jurisdiction attaches. I do not see any sound distinction between that case, and other cases, upon which the jurisdiction can be rested. It does not change the nature of the case, that the parties to it are mariners. The jurisdiction, in cases of tort, depends on locality, in cases of contract, upon the subject-matter; but under our system, never upon the character or occupation of the parties. And although, in the case supposed, the marine services in saving the vessel, if to be compensated by wages, or by something in the nature of wages, are a subject-matter within the admiralty jurisdiction, yet if those services are to find their compensation only by forming an item in an account between part owners, of which the admiralty has not jurisdiction, they must go with the principal subject to which they are. merely an incident, and find their compensation in another jurisdiction, which is competent to examine and adjudicate upon the whole subject. The decree of the district court must be reversed, and the libel dismissed for want of jurisdiction.

---

KELLY (ANTRIMS v.). See Case No. 494.

KELLY v. ATLANTIC & G. R. CO. See Case No. 7,299.

KELLY (CASE v.). See Case No. 2,492.

---

## Case No. 7,670.

### KELLY v. HARDING et al.

[5 Blatchf. 502.] [1]

Circuit Court, S. D. New York. Oct. 15, 1867.

JURISDICTION—CITIZENSHIP OF PARTIES—NEITHER CITIZEN WHERE SUIT BROUGHT—HOW CITIZENSHIP MUST APPEAR.

1. This court has no jurisdiction of a suit where one party is a citizen of Georgia and the other party is a citizen of Massachusetts.

2. The jurisdiction of this court must appear affirmatively by the record, and the want of jurisdiction need not be pleaded.

3. This court has no jurisdiction whatever over controversies between parties, all of whom, plaintiffs as well as defendants, are citizens of

states other than that in which the suit is brought.

[This was a bill in equity by John J. Kelly against David J. Harding and Ziba Nickerson, as administrators, etc., of John Payne, deceased.]

SHIPMAN, District Judge. The plaintiff, in his declaration, alleges, that he is a citizen of the state of Georgia, and that the defendants are citizens of the state of Massachusetts. This allegation excludes the jurisdiction of this court. The fact that a plea to the jurisdiction was not put in by the defendant, instead of a plea to the merits, does not help the case. One of the parties must be a citizen of the state where the suit is brought, and there must be a positive averment of that fact on the record. But, instead of that, the averment is exactly the reverse, and in advance shows that the court is without authority to try the cause. It is hardly necessary to say, that this is not like a case where the court has jurisdiction over the parties, after the service of process on the defendant, or a case where, though no service has been made on the defendant, he comes in and submits himself to the jurisdiction of the court, thus waiving a provision of the statute enacted for his protection. This court has no jurisdiction whatever over controversies between parties, all of whom, plaintiffs as well as defendants, are citizens of states other than that in which the suit is brought. This suit is therefore coram non judice, and a judgment upon its merits would be a nullity. Let an order be entered dismissing the suit for want of jurisdiction, without costs.

---

KELLY v. HOME INS. CO. See Case No. 7,-658.

KELLY (HOWLAND v.). See Case No. 6,-796.

---

## Case No. 7,671.

### KELLY v. HUFFINGTON.

[3 Cranch, C. C. 81.] [1]

Circuit Court, District of Columbia. April Term, 1827.

PRACTICE AT LAW — SLANDER — SPECIAL DAMAGE NOT STATED IN DECLARATION — PROOF OF SAME—PLAINTIFF'S RIGHT TO RECOVER.

In slander, the plaintiff is not permitted to prove special damage not stated in the declaration; and the plaintiff may recover, although he shall have failed to prove the special damage laid in his declaration.

Slander, in saying of a master of a vessel that he is a drunkard, and incapable of managing a vessel. The declaration stated, as a special damage, that Captain Rose refused to take him as mate of the ship Shenandoah. The plaintiff offered evidence

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

of special damage, not stated in the declaration.

Mr. Taylor, for defendant, objected to it, and THE COURT (THRUSTON, Circuit Judge, absent) sustained the objection.

Mr. Taylor then prayed the court to instruct the jury, that if they should be of opinion that the plaintiff has not supported the averment of the special damage in the declaration, the plaintiff is not entitled to recover any damages in this action.

But THE COURT refused.

---

## Case No. 7,672.

### KELLY v. JOHNSON et al.

[3 Wash. C. C. 45.] [1]

Circuit Court, D. Pennsylvania. April Term, 1811.

CARRIERS—EMBARGO—REFUSAL TO CARRY—RIGHT TO STORAGE—EFFECT OF BILL OF LADING.

The plaintiff's agent shipped a quantity of flaxseed, on board the vessel of the defendants, to be delivered to the plaintiff in Ireland, and before the vessel broke ground, notice of the embargo was given, when the captain refused to sign a bill of lading for the property; but gave a receipt, stating that a bill of lading would be given, when he should be permitted to proceed on the voyage. A survey was afterwards held on the cargo, and on the report of the surveyors and their recommendation, it being in a spoiling condition, it was landed, and was afterwards received by the plaintiff; he paying to the defendants the sum of one thousand dollars, which they claimed for storage, wharfage, and other expenses incurred by having the cargo on board their vessel; the plaintiff reserving his right to recover back the said sum, if the defendants were not legally entitled to it. The court held, that the decision of the referees, who had awarded in favour of the defendants the sum paid to them by the plaintiff, was erroneous, and the award of the referees was set aside.

Exception to the report of referees. The case was, that Warder, of this city, on the 24th of December, 1807, shipped on board of a vessel belonging to the defendants [Johnson & M'Kean], a quantity of flaxseed, to be carried to the plaintiff in Ireland; and the day after, and before the vessel had broke ground, notice of the embargo was received at Philadelphia. In consequence of this, the captain refused to sign bills of lading, but gave a receipt for the cargo, promising to sign bills of lading as soon as he should be permitted to proceed on the voyage. Things remained in this situation, until the 20th of January, 1809, when a survey of the vessel and cargo was made, under an order of the district court, and a report was made that the cargo was become spoiled and unmerchantable, that it was injuring the vessel, and advising that the cargo should be unladed. The defendants, upon this, insisted that Warder should receive

the cargo, which he refused. The defendants threatened to sell the cargo, for the benefit of those it might concern; upon which Warder consented to receive the cargo, and advertised it for sale. The defendants refused to deliver the cargo to the purchaser, until they were paid their account, about 1000 dollars, for storage, wharfage, and other expenses and losses to which they had been exposed, by having had the cargo so long on board; and finally, it was agreed that the defendants should receive the said sum, but without prejudice to the plaintiff's right to claim the same, to be decided in an amicable action. The referees allowed the defendants' account to the amount of about 1000 dollars; and one of them, upon his examination, stated, that the vessel, but for having this cargo on board, might have been employed in the coasting trade—that the vessel was injured by keeping it on board, and that they considered the sum allowed, only as a fair compensation for their losses.

Mr. Dallas, for defendants.

Mr. Hallowell cited the following cases, to show that no freight is due, till the vessel breaks ground: Abb. Shipp. 179, 207; and that an embargo does not dissolve, but only suspends, the contract to carry a cargo, 8 Term R. 262; also, Odlin v. Insurance Co. of Pennsylvania [Case No. 10,433], and 3 Johns. 321.

WASHINGTON, Circuit Justice. If regular bills of lading had been signed, and no law had afterwards passed to affect the contract of affreightment, it is admitted, that the defendants were bound to carry the goods, as soon as the embargo was removed. But, it is said, that the refusal of the captain to sign bills of lading and the nature of his receipt, made everything executory, and varies this from most other cases. We think quite otherwise. The meaning of the receipt is plainly this, that as the embargo operated, for the present, to interrupt the voyage, and to suspend the effect of a bill of lading, if it were given, it would be unnecessary at that time to sign them; but, that as soon as the restrictions should be removed, the captain would perform his contract to carry the cargo, and would then sign the bills of lading. This agreement being made after the existence of the embargo was known, makes the case rather stronger against the defendants, than if bills of lading had been signed before it was known. Certainly, it does not weaken the plaintiff's case. Whether the enforcing law, passed on the 9th of January, 1809 [2 Stat. 506], can be construed to dissolve the contract, need not be determined; but if it did, it could not operate further, than to discharge the defendants from the claim of damages, for not carrying the cargo when the restrictions of the embargo should be